# Order

**Michigan Supreme Court**
**Lansing, Michigan**

September 24, 2010

140120 & (124)

SHERI M. ANDERSON,
      Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
      Defendant-Appellant.

_____/

SC: 140120
COA: 277096
Wayne CC: 03-305800-NI

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

On order of the Court, the motion for miscellaneous relief is GRANTED. The application for leave to appeal the August 25, 2009 judgment of the Court of Appeals is considered, and it is DENIED, there being no majority in favor of granting leave to appeal or taking other action.

CORRIGAN, J. (*dissenting*).

I respectfully dissent from the Court's decision to deny defendant State Farm's application for leave to appeal. Defendant automobile no-fault insurer argues that plaintiff insured will receive an unjustified $3.2 million because the jury verdict will require two insurance companies to pay for duplicate benefits. The trial court precluded the jury from hearing proof that plaintiff stood to recover nearly $675,000 per year by receiving 22 facial injections twice a week. The trial court's decision to exclude evidence of collateral source benefits seems outside the range of principled outcomes. It deprived the jury of facts highly relevant to its determination whether the facial injections were reasonable and necessary, thus impeding the jury's search for truth. Therefore, I would grant leave to appeal to consider the showing required under *Nasser v Auto Club Ins Ass'n*, 435 Mich 33 (1990), to admit evidence of collateral source benefits in order to show malingering or motivation of financial gain, and to determine whether the trial court abused its discretion when it excluded such evidence in this case.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Plaintiff's face and head were injured when she was involved in an accident in December 1999 while riding in a vehicle insured under an uncoordinated no-fault policy issued by defendant State Farm, which became liable for personal protection insurance (PIP) benefits arising from the accident. As noted, plaintiff also had a health insurance policy with Blue Cross Blue Shield. Plaintiff's diagnosis of multiple sclerosis predated

the accident. After the accident, she allegedly experienced headaches and pain in her face, head, neck and shoulders. Dr. Maurice Converse, an anesthesiologist, began injecting plaintiff with steroids, an anesthetic, and a compound called Sarapin at the MedBack Clinic in Ohio. Plaintiff's medical records show, and Dr. Converse acknowledged, that his injections of plaintiff were initially based on treating symptoms associated with plaintiff's multiple sclerosis, (hence not accident related).

The trial court precluded the jury from hearing that the MedBack Clinic was closed after an FBI investigation and raid involving the MedBack Clinic's healthcare fraud. After the MedBack Clinic closed, Dr. Converse rented space at another clinic in Ohio so he could continue injecting plaintiff. Remarkably, plaintiff was his only patient.

State Farm initially paid for the injections. State Farm paid plaintiff nearly $300,000 for those treatments. Plaintiff eventually began receiving 44 injections per week. In August 2001, State Farm initiated a fraud investigation of plaintiff's claims, which included a review of plaintiff's medical files and an independent-medical examination. Dr. Eugene Mitchell conducted the independent-medical examination and concluded that the injection treatments should be stopped. As a result, State Farm ceased paying plaintiff for the injections.

Plaintiff thereafter filed this no-fault action, and the case proceeded to a jury trial. State Farm's liability for plaintiff's injections depended on the jury's determination whether plaintiff's injuries for which she received the injections arose out of the automobile accident or her multiple sclerosis, and whether the injections that Dr. Converse administered were reasonable and necessary. The jury returned a verdict for plaintiff, awarding her nearly $2.5 million in medical expenses and interest on the unpaid benefits. The trial court entered a judgment that also included costs and attorney fees, resulting in a total judgment of more than $3.2 million. The trial court denied State Farm's motion for judgment notwithstanding the verdict. The Court of Appeals affirmed.

In its application for leave to appeal to this Court, State Farm argues that the trial court erred in granting plaintiff's motion in limine to exclude evidence that plaintiff's medical benefits were uncoordinated and that Blue Cross was paying plaintiff's medical expenses.

## II. ANALYSIS

Under MCL 500.3107(1)(a), a no-fault insurer is liable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation." Plaintiff's motion to exclude evidence of the uncoordinated benefits was based on this Court's decision in *Nasser*. Like this case, *Nasser* was a no-fault action in which the trial court granted the plaintiff's motion to exclude all evidence of other insurance coverage. The trial court ruled, and the Court of Appeals agreed, that evidence of other insurance coverage was barred by the collateral source rule and MRE 403.

In *Nasser*, we held that evidence of other insurance coverage is inadmissible for the purpose of mitigating damages under the collateral source rule, but recognized an "exception to the general rule of exclusion," where evidence of collateral source benefits would establish malingering. *Nasser*, 435 Mich at 58-59. We noted that evidence of collateral source benefits should be admitted "'only if it appears to the trial judge from other evidence that there is a real possibility that plaintiff was motivated by the receipt of collateral source benefits to remain inactive as long as he did.'" *Id*. at 59, quoting 22 Am Jur 2d Damages, § 967, p 1004. Having reversed the decision of the trial court on other grounds and remanded for further proceedings, we declined to decide whether the "exception" to the collateral source rule applied. *Id*. at 62. We directed the trial court, however, to consider on remand whether the evidence was "offered to prove malingering or exaggeration of injuries by plaintiff, rather than in mitigation of damages." *Id*. at 63.

In this case, the trial court precluded the jury from hearing that plaintiff was making nearly $675,000 per year by receiving 22 injections twice a week. At the hearing on plaintiff's motion in limine to exclude evidence of collateral source benefits, defense counsel argued that "the possibility of putting in your pocket the same amount of money that the doctor would put in his pocket if he were being paid by Blue Cross is a motive to undergo these treatments . . . ." Transcript of Motion Hearing, April 7, 2005, p 30. Defense counsel also argued

> All I have to do in any case is to be able to show that this person's activities may or may not be motivated by what you would think a person normally goes to a doctor for in this case. . . . She goes for almost three years now and undergoes these treatments, and she's going to make $ 2 million off of this treatment. [*Id*.]

The trial court granted plaintiff's motion to exclude the evidence, ruling that "the fact that certain doctors may not be able to understand [] plaintiff's response or lack of response to certain injections" would not lead it to determine that, under *Nasser*, plaintiff was malingering. *Id*. at 47-48.

The Court of Appeals held that the trial court did not abuse its discretion in excluding evidence of plaintiff's receipt of collateral source benefits because defense counsel failed to present independent evidence of malingering and therefore failed to "meet its foundational burden under *Nasser*." *Anderson v State Farm Mut Auto Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued August 25, 2009 (Docket No. 277096), pp 3-4. I believe that the circumstances on this record reflect an adequate foundation to show plaintiff was engaged in malingering.

Defendant clearly sought to admit the evidence of collateral source benefits to show that plaintiff was motivated by financial gain, rather than by a need for medical treatment. Plaintiff's receipt of nearly $675,000 a year for facial injections was surely a

sufficient foundation to admit proof of the collateral source benefits. The erroneous exclusion of this evidence appears inconsistent with substantial justice and affects a substantial right of State Farm[1] because the evidence was critical to the jury's determination whether the injections administered by Dr. Converse were "reasonable and necessary" under MCL 500.3107(1)(a). The trial court's ruling precluded the jury from considering the plausible alternative explanation that plaintiff continued to receive 44 injections in her face per week not because they relieved her pain, but because she stood to gain $295 per injection – or $12,980 per week – from continuing the treatment. I would grant State Farm's request that this Court review what occurred here and consider whether the lower courts' rulings were consistent with *Nasser*. In addition, I question why the verdict was not reduced under MCL 600.6303(1),[2] the collateral source rule.

YOUNG and MARKMAN JJ., join the statement of CORRIGAN, J.

KELLY, C.J., not participating. I am not participating because of a close familial relationship with one of the witnesses.

---

[1] A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, but "any error in the admission or exclusion of evidence will not warrant appellate relief 'unless refusal to take this action appears . . . inconsistent with substantial justice,' or affects 'a substantial right of the [opposing] party.'" *Craig v Oakwood Hosp*, 471 Mich 67, 76 (2004) (citations omitted).

[2] MCL 600.6303(1) provides:

In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict. Subject to subsection (5), if the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2). This reduction shall not exceed the amount of the judgment for economic loss or that portion of the verdict which represents damages paid or payable by a collateral source.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

September 24, 2010

*Corbin R. Davis*
Clerk

p0921